IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                   CR No. 16-3421 KG

DARWIN NEAL KINZHUMA,

    Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter is before the Court on the Amended Petition to Revoke Defendant's Supervised Release. (Doc. 74) (Petition). The United States alleges Defendant violated the conditions of his supervised release by, inter alia, committing another sexual assault. Having considered the relevant evidence presented at the revocation hearing along with the applicable law, the Court finds and concludes Defendant committed new crimes in violation of his supervised release. The Court will set the matter for sentencing.

*I. Procedural Background*

In 2016, Defendant pled guilty to aggravated sexual abuse in violation of 18 U.S.C. §§ 1153, 2241(a), and 2246(2)(A). (Doc. 32). By a Judgment entered May 22, 2017, the Court sentenced him to eighty-one (81) months imprisonment, followed by a five-year term of supervised release. (Doc. 38). Defendant's conditions of supervision require him to participate in an outpatient substance abuse treatment program and refrain from committing another crime. *Id.* On March 30, 2021, Defendant was released from prison and placed on supervised release. (Doc. 74).

The United States Probation Office (Probation) filed a petition for revocation on May 4, 2022. (Doc. 41). Probation alleges Defendant committed a new crime based on his arrest for tribal charges of rape and false imprisonment. Probation further alleges Defendant failed to participate in substance abuse treatment. The United States initially filed a separate complaint charging Defendant with sexual abuse in Indian County (18 U.S.C. § 2242) and sexual abuse by a repeat offender (18 U.S.C. § 2247). *See* CR No. 23-696 KG. Thereafter, the Court granted the United States' motion to dismiss those charges without prejudice, and the United States pursued revocation in this case.

On July 2, 2024, the Court held a revocation hearing. The United States presented sworn testimony from three Bureau of Indian Affairs (BIA) agents/officers, Sexual Abuse Nurse Examiner (SANE) Michelle Wood; and Defendant's Probation Officer along with audio recordings from the victim. Defendant stipulates that he violated his conditions of supervised release by failing to appear for substance abuse treatment as ordered. (Doc. 85) at 111. The instant issue is whether he also committed any new crime. The United States and Defendant submitted briefing and proposed findings/conclusions following the hearing, and the matter is ready for ruling.

*II. Findings of Fact*

On May 3, 2022, BIA Special Agent Collin Pilcher encountered victim Jane Doe after she was sexually assaulted. (Govt. Exh. 5) at 2. The BIA conducted the investigation because Doe and Defendant are both enrolled members of the Mescalero Apache Tribe with some degree of Indian blood. (Doc. 85) at 56; (Govt. Exh. 6, 7). Agent Pilcher testified that, according to Doe, she was walking home from Tularosa, New Mexico when Defendant offered her a ride.

2

(Doc. 85) at 44. She accepted, noting she trusted him and knew him from when they were younger. *Id.* Doe further disclosed that Defendant purchased alcohol and stated he needed to stop at his house to change his clothes. *Id.* at 45. Defendant's house is located within the Mescalero Apache Indian Reservation. (Govt. Exh. 8). Defendant encouraged Doe to drink beer at the house. *Id.* at 46. When she returned from the restroom, the beer burned as though whiskey or vodka were added to the can. *Id.* Doe recalled to Agent Pilcher that Defendant was sober. *Id.*

At some point Doe began to feel dizzy, started slumping over, and blacked out. (Govt. Exh. 4) at 4:11, 11:12, 12:14. Agent Pilcher testified that he believed she was intoxicated, based on her description of her alcohol consumption and how she felt. (Doc. 85) at 45. The next thing Doe remembered was that Defendant was on top of her holding her shoulders down, and she either did not have clothes on, or he was removing her clothes. *Id.* at 4:36, 11:26, 14:49, 15:19, and 15:43. Doe stated that Defendant was stronger than her and that she could not push him off. (Govt. Exh. 3) at 8:58, 24:54. Doe confirmed Defendant's penis was inside her vagina; she felt pain in her back, backside, and vagina; and she thought he had "done it to me in the backside." *Id.* at 15:28, 16:30, 17:11. Doe was adamant that prior to the assault, she never had a physical relationship with Defendant. (Doc. 85) at 47.

Doe went to the hospital following the rape. SANE Nurse Michelle Wood conducted an examination and collected a rape kit. (Doc. 85) at 90-95. Nurse Wood testified that Doe stated she knew the assailant. *Id.* Doe further told Wood she thought the assailant put something in her beer and that during the assault, Doe tried to kick him or get out from underneath him. *Id.* at 95, 106. Nurse Wood observed significant injuries all over Doe's body, including bruising on her

arms, inner thighs, and buttocks; vaginal pain; bruising on the cervix; a labia minora tear with blood. *Id.* at 95-100. Nurse Wood testified the bruising on Doe's arms and coccyx are consistent with being held down and that Doe's other injuries are consistent with forceful intercourse. *Id.* at 100-101. Swabs from the rape kit were submitted for DNA testing, which reflect Defendant cannot be eliminated as possible contributors to the sample. *Id.* at 79.

After receiving notification of the sexual assault, Agent Pilcher met with Doe at the hospital. (Doc. 85) at 30-31. Agent Pilcher testified she was frightened, emotional, very intoxicated, and that her speech was slurred. *Id.* at 30-33. Doe indicated to Agent Pilcher that the person who assaulted her was someone she thought was a friend. *Id.* at 32-33. She stated her assailant's name was Waylon Kinzhuma; that she knew him through his sister, Virgo Kinzhuma; and that she had known him for her whole life. *Id.* at 30-33, 60. Agent Pilcher asked whether the assailant was Darwin Kinzhuma, and Doe replied "yes." *Id.* at 60. Agent Pilcher testified that Doe was using a nickname when she originally referred to the assailant as Waylon Kinzhuma, rather than Daniel Kinzhuma, and that such practice is common on their reservation. *Id.* at 61, 73. Doe also told Agent Pilcher: (1) Kinzhuma had recently left prison after serving an eight-year sentence; (2) Kinzhuma lived in the Upper Flats on the second row, where the assault took place; and (3) other named individuals were watching Kinzhuma's house while in prison. *Id.* at 44, 70-71. Each of these details matched Defendant, including the name of the couple who rented his residence during his incarceration. *Id.*

Despite minor inconsistencies in Doe's first and second interviews with Agent Pilcher, he testified that Doe was confident in her identification of Defendant and consistent in her overall account of the sexual assault. Agent Pilcher explained that assault victims become confused, and

Doe's alcohol consumption led to her memory issues. *Id.* at 40, 50. However, Agent Pilcher the SANE report corroborated the details of Doe's account. *Id.* at 40, 51-52.

Senior Probation Officer Barela also testified at the hearing regarding her supervision of Defendant following his release from prison in 2021. Officer Barela testified that Defendant had numerous issues during his supervision, including failing to attend substance abuse sessions and failing to attend drug testing. (Doc. 85) at 113. Officer Barela noted similarities between Defendant's 2017 rape conviction and Doe's rape. *Id.* at 117. In both cases, both victims were intoxicated, the assaults took place at Defendant's house, and both assaults involved the victims being pinned down and penetrated. *Id.* Officer Barela testified that Defendant identified a risk for reoffending against "vulnerable women … who have been intoxicated" and that he has a history of using alcohol as an excuse for rape. *Id.* at 119-120.

At the time of the assault, Doe was essentially homeless and had been "bouncing around" with relatives or friends. (Doc. 85) at 32. The SANE report also reflects that at certain times, Doe stayed at a "shelter." (Govt. Exh. 10). BIA Agent Volquardsen-Bloomquist served Doe on June 15, 2024 with notice of the revocation hearing, instructing her to appear at the courthouse on the date of the hearing. *Id.* at 19. Agent Volquardsen-Bloomquist observed that Doe was intoxicated during service but agreed to appear. *Id.* Doe did not attend the revocation hearing. Counsel for the United States represented that she worked with a victim witness specialist in Mescalero, New Mexico to obtain a phone number for Doe. *Id.* at 13. However, when Agent Pilcher called the number on the day of the hearing, Doe did not answer, and the voicemail system was not enabled. *Id.* At the hearing, the United States submitted recordings of Doe's

interviews with Agent Pilcher. (Govt. Exh. 3, 4). As discussed in more detail below, the Court finds the United States made reasonable efforts to secure Doe's appearance at the hearing.

Based on the evidence, and consistent with the legal conclusions below, the Court finds that each BIA agent, SANE Nurse Wood, and Probation Officer Barela were credible witnesses. The Court further finds, by a preponderance of the evidence, that: (1) Defendant knowingly penetrated Doe's vagina with abusive intent; (2) Defendant knew Doe could not and did not consent to the sexual conduct, based on her intoxication, her initial lack of consciousness, his own sobriety, and the fact that he physically restrained her while she tried to push or kick him; (3) both parties are Indian; and (4) the sexual assault occurred within Indian Country. These actions occurred in 2022, while Defendant was on supervised release in connection with his prior 2017 conviction for aggravated sexual abuse in violation of 18 U.S.C. §§ 1153, 2241(a), and 2246(2)(A). Under the preponderance standard, and as discussed below, the Court also finds that Doe positively and adequately identified Defendant as the assailant.

*III. Conclusions of Law*

The district court may revoke a term of supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release[.]" 18 U.S.C. § 3583(e)(3). *See also Johnson v. United States*, 529 U.S. 694, 700 (2000) (The burden of proof at a revocation hearing is a preponderance of the evidence). This includes minor violations and the commission of a new federal crime. *See United States v. Richardson*, 2023 WL 1814711, at *3 (10th Cir. Feb. 8, 2023) (evaluating revocation based on a new crime and other substance abuse violations). "Procedurally, a court's determination of whether to revoke a term of supervised release is governed by Federal Rule of Criminal Procedure 32.1." *Id. See also United States v.*

6

*Tinsley*, 2023 WL 2196879, at *2 (10th Cir. Feb. 24, 2023) (affirming where "district court complied with the procedures for revoking probation set forth in Federal Rule of Criminal Procedure 32.1.").

"[R]evocation … is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply." *Morrissey v. Brewer*, 408 U.S. 471, 472 (1972). "Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Id.* Rule 32.1 "codified due process guarantees that apply to revocation hearings." *United States v. Williams*, 106 F.4th 1040, 1044 (10th Cir. 2024) (quotations omitted). That rule "provides that a defendant in a revocation hearing is entitled to an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." *Id.* (quotations omitted).

The Federal Rules of Evidence do not apply in revocation proceedings. *See* Fed. R. Evid. 1101(d)(3). The "process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey*, 408 U.S. at, 489. However, when an adverse witness does not appear, the Court must consider whether evidence from that witness is still permissible in the "interest of justice." *United States v. Jones*, 818 F.3d 1091, 1098 (10th Cir. 2016).

Defendant argues revocation is inappropriate because the United States dismissed the separate criminal charges stemming from Doe's sexual assault. Alternatively, Defendant contends he had a right to confront Doe as an adverse witness at the revocation hearing and that

7

the United States otherwise failed to show he violated his conditions of release by committing rape. The Court will address each argument below.

### A. Dismissal of Separate Charges Does Not Preclude Revocation

As an initial matter, Defendant argues that the Court cannot revoke supervised release based on a new crime because the underlying criminal charges were dismissed without prejudice. The prosecution of an underlying criminal charge is not determinative of whether revocation is appropriate. *See Minnesota v. Murphy,* 465 U.S. 420, 435 n. 7 (1984) (revocation "is not a criminal proceeding"). Hence, the dismissal an of underlying criminal charge does not preclude revocation on the same facts, provided the evidence at the revocation hearing shows the defendant committed the alleged violation. *See United States v. Green,* 383 Fed. Appx. 301, 302-03 (4th Cir. 2010) (state's dismissal of criminal charges requiring proof beyond a reasonable doubt did not prevent court from finding violation by preponderance of the evidence); *United States v. Willis,* 795 F.3d 986, 992 (9th Cir. 2015) (court may revoke the defendant's supervised release if the defendant's conduct constituted a crime whether the defendant was the subject of a separate prosecution or not).

### B. The Jones Factors Favor the Consideration of Adverse Witness Statements

Defendant also argues he had a right to confront Doe at the revocation hearing and that the Court should disregard any adverse witness statements. Under *Jones,* the Court must consider whether adverse witness statements should be considered at a revocation hearing in the interest of justice. *See United States v. Jones*, 818 F.3d 1091, 1098 (10th Cir. 2016). Such interest is to be evaluated "by balancing (1) the person's interests in the constitutionally guaranteed right to confrontation against (2) the government's good cause for denying it."

*United States v. Williams*, 106 F.4th 1040, 1046 (10th Cir. 2024) (citing *Jones*, 818 F.3d at 1100). In performing the balancing test, "reliability is a very important factor in determining the strength of a releasee's confrontation right." *Jones*, 818 F.3d at 1100. "Examples of evidence possessing recognized indicia of reliability include: (1) the conventional substitutes for live testimony (e.g., affidavits, depositions, and documentary evidence), (2) statements falling under an established exception to the hearsay rule, (3) statements corroborated by detailed police investigative reports, and (4) statements corroborated by the releasee's own statements." *Id.* at 1098 n. 4 (quotations omitted).

On balance, *Jones* favors the consideration of adverse witness statements. Defendant's interests in confronting Doe in person is tempered by the amount of reliable evidence in this case. The United States presented multiple witnesses who assisted Doe immediately after the rape, including Agent Pilcher and SANE Nurse Wood. *See United States v. Isaacs*, 2023 WL 8524925, at *2 (10th Cir. 2023) (affirming where "district court relied on the probation officer's testimony and the police report … to conclude by a preponderance of the evidence that [defendant] committed assault and battery in violation of his supervised release"). Their testimony was supported by the physical evidence, which is consistent with Doe was held down and forcibly penetrated. *See Jones*, 818 F.3d at 1098 n. 4 ("Corroborating evidence is often key to determining whether a statement is sufficiently reliable.") (quotations omitted). The rape in this case is consistent with Defendant's prior crimes against other victims. Moreover, the third-party testimony here was bolstered by Doe's own recorded statements to police.

As to the second *Jones* factor, the evidence reflects Doe is essentially homeless, has substance abuse issues, and was very frightened after the assault. The United States nevertheless

9

made a diligent effort to secure Doe's attendance at the hearing by serving her at a known address and working with a local witness specialist in Mescalero. The United States has good cause for not securing the attendance of Doe, given Doe's difficult and transient lifestyle. *See United States v. Green,* 2023 WL 4195884, at *3 (10th Cir. 2023) (permitting adverse witness statements under *Jones* where "the government could not locate D.S., despite using reasonable efforts" and "the hearsay statements were supported by other evidence"). Hence, the Court concludes the interest of justice favors the use of adverse witness statements and will rely on such statements in this ruling.

*C. The Preponderance of the Evidence Demonstrates Supervised Release Violations*

Defendant stipulates that he violated the conditions of his supervised release by failing to appear for substance abuse treatment as ordered. (Doc. 85) at 111. To establish the more serious violation - that he committed the new crime of sexual abuse in Indian Country - the United States must prove four elements by a preponderance of the evidence. The facts must establish: (1) the defendant knowingly engaged in a sexual act with victim; (2) the defendant knew that victim was incapable of appraising the nature of the conduct, physically incapable of declining participation in that sexual act, or physically incapable of communicating unwillingness to engage in that sexual act; (3) the defendant or the victim is an Indian; and (4) the sexual assault occurred within Indian Country. *See* 18 U.S.C. § 2242(2)(A). To establish Defendant violated his conditions of release by committing sexual abuse by a repeat offender, the evidence must show he committed a sexual abuse offense, including the above-mentioned crime, after sustaining a prior sex offense conviction. *See* 18 U.S.C. § 2247.

Defendant primarily contends Doe failed to positively identify him as the assailant. As noted above, there is ample detail to support the finding that Defendant is the assailant, under the preponderance standard. Doe knew Defendant for many years along with his sister. Doe knew personal details about Defendant, including his incarceration history, a description of his home, and the names of his renters. Doe identified Defendant using his last name and these details, and she was confident in her identification. The rape was consistent with Defendant's prior sexual assaults. There is also some evidence that his DNA could not be excluded from the rape kit, although such evidence is not needed in light of the other details. On this record, any minor inconsistencies in Doe's statements or conversation with Agent Pilcher cannot negate the finding that Defendant committed the assault.

Defendant alternatively appears to argues that, even if identification is not at issue, Doe consented to the sexual act. As noted in the findings, the evidence reflects Doe was intoxicated and was initially unconscious when Defendant began either undressing her or having sex with her. The evidence further reflects he remained sober and physically restrained her while she tried to push him off or kick him. The SANE report corroborates the non-consensual nature of the event, as Doe had bruising on her arms consistent with being held down and other serious injuries to her genitals. A preponderance of the evidence shows Doe did not or could not consent to the sexual act. *See United States v. Freeman*, 70 F.4th 1265, 1275 (10th Cir. 2023) (incapacity under § 2242 includes "one who is physically incapable due to sleep, intoxication, or drug use").

Finally, to the extent Defendant challenges the lack of DNA evidence or the use of evidence regarding his prior crimes, such arguments are unavailing. This case does not hinge on

DNA, given that the victim knows Defendant, and the physical evidence shows she was raped. The DNA evidence here merely suggests Defendant cannot be excluded, which corroborates the other details. The Court also notes the evidence of Defendant's prior rapes is appropriate in this case. The "usual rules of evidence need not be applied" in revocation hearings, as noted above. *See United States v. Henry*, 852 F.3d 1204, 1206 (10th Cir. 2017). And, in any event, the evidence would be admissible under Fed. R. Evid. 404(b) and 413 to show Defendant "had a particular propensity" for this type of sexual assault" and "that … propensity … has a bearing on the charged crime." *United States v. Guardia*, 135 F.3d 1326, 1332 (10th Cir. 1998)

Having rejected Defendant's arguments, the Court concludes that Defendant committed sexual abuse in Indian Country in violation of 18 U.S.C. § 2242(2)(A) and his conditions of supervised release. A preponderance of the evidence shows Defendant knowingly penetrated Doe's vagina with abusive intent. Doe could not consent, as evidenced by her initial lack of consciousness and intoxication, and alternatively that she did not consent, as evidenced by the physical injuries and her statements that she tried to kick and push Defendant off of her person. Both Defendant and Doe have Indian blood, and the sexual assault occurred at Defendant's residence on the Mescalero Apache Indian Reservation. The Court further concludes Defendant committed sexual abuse by a repeat offender in violation of 18 U.S.C. § 2247. The first element (the commission of a new sex offense) is satisfied, as set forth above. Defendant also has at least one prior conviction for aggravated sexual abuse in violation of 18 U.S.C. §§ 1153, 2241(a), and 2246(2)(A).

*IV. Conclusion*

In sum, the Court finds and concludes Defendant committed three violations of his supervised release. Defendant failed to appear for substance abuse treatment as ordered and committed two new federal crimes in violation of 18 U.S.C. §§ 2242(2)(A) and 2247. The Court issues this ruling in advance of the final hearing on revocation and sentencing. These findings and conclusions are incorporated by reference into any final judgment on revocation. At the hearing, the Court will consider relevant factors under 18 U.S.C. § 3553(a). *See Tinsley*, 2023 WL 2196879, at *2 (citing 18 U.S.C. § 3565(a)(2) and noting a court may "revoke the sentence of probation and resentence the defendant" "after considering the factors set forth in section 3553(a) to the extent that they are applicable").

_____
CHIEF UNITED STATES DISTRICT JUDGE